## Zollner *v.* Moffitt, Appellant.

*Promissory notes—Protest—Notary public's certificate of protest—Memorandum as to notice sent to indorsers.*

The Act of December 14, 1854, sec. 2, P. L. (1855) 724, making the certificate of a notary public proof of the facts therein stated, does not provide that the notices to indorsers of promissory notes must be sent before the certificate of protest is signed and sealed, and that if they are not so sent it shall not be proof. In the eyes of the law, the protest, including the presentation, the making out of the certificate and the giving of notices to the indorsers is one act, and the order of time in which the constituent parts of that act are performed is immaterial.

Argued Oct. 14, 1909. Appeal, No. 107, Oct. T., 1909, by defendant, from judgment of C. P. Washington Co., Feb. T., 1907, No. 60, on verdict for plaintiff in case of B. A. Zollner v. John H. Moffitt. Before MITCHELL, C. J., FELL, BROWN, MESTREZAT, POTTER, ELKIN and STEWART, JJ. Affirmed.

Assumpsit on a promissory note. Before McILVAINE, J.

At the trial the defendant, John H. Moffitt, testified positively that he had received no notice of the protest of the note.

The certificate of protest of the notary contained a memorandum to the effect that notice of protest had been sent to the indorsers. The court submitted to the jury the question as to whether the presumption of notice arising from the certificate had been rebutted.

Verdict and judgment for plaintiff for $2,000. See Zollner v. Moffitt, 222 Pa. 644.

On a motion for a new trial McIlvaine, P. J., filed the following opinion:

Two reasons have been assigned in support of this motion:

1. The court erred in not affirming the defendant's point.

2. The court erred in overruling the objection of the defendant and admitting the testimony of Risbeck that Miss Minnie Richardson on the second or third of November inquired of him for the address of B. A. Zollner.

The point presented by the defendant and the court's ruling thereon are as follows:

1. If the jury find from the evidence that at the time Miss Minnie Richardson signed and sealed the certificate of protest of the note in suit she had not sent notice of protest to any of the indorsers, and had not even made out the notices of protest, then the presumption of due notice arising from the certificate itself is completely rebutted. *Answer*: Refused. It is not for the court but the jury to say when the presumption arising from the certificate is completely rebutted.

To properly judge the action of the court in answering this point as it did, the evidence should be considered as well as the purpose the defendant's counsel wished to accomplish by having the point affirmed.

The only testimony to which the point could refer was that of the notary, Miss Minnie Richardson, which according to the stenographer's record is as follows:

"Q. Where do you live? A. Charleroi. Q. What is your business? A. I am a notary public. Q. Were you a notary public on November 1, 1906? A. Yes, sir. Q. I show you paper marked 'Exhibit "B," ' and ask you to state whether

or not you made out that certificate? A. I did. Q. That is your signature and your seal? A. Yes, sir. Q. At the time you signed and sealed this certificate, had you sent notice of protest to anyone? A. No, sir. Q. I show you exhibit No. 1, and ask you to state whether that was signed and sealed by you as notary public? A. Yes, sir. Q. I show you exhibit No. 2, and ask you to state whether or not that envelope is addressed in your handwriting? A. Yes, sir, it is."

Cross-examination by Mr. Bane: "Q. Miss Richardson, you say this certificate is your official certificate as notary public? A. Yes, sir, it is. Q. It is your certificate of the protest of the note which was heretofore marked 'Exhibit "A," February 25, 1907, Wm. H. McEnrue?' A. Yes, sir. Q. I understood you to say that you did not send the notice of protest to the indorsers before you executed the certificate? A. No, sir, I didn't. Q. You never did? A. I never did. Q. You always sent the notice of protest after you filled out the certificate? A. Yes, sir. Q. I call your attention to the words at the left-hand corner of this certificate, 'Memorandum—Sent notice to B. A. Zollner, John H. Moffitt, W. C. Fishburne, Charleroi Savings & Trust Company.' That writing is in your handwriting, is it not? A. Yes, sir. Q. It was put there by you before you returned this certificate to the bank? A. Yes, sir. Q. You received this note from the cashier of the First National Bank as notary public, and in your official capacity, for the purpose of protesting it? A. Yes, sir. Q. And this certificate with the note attached to it were returned to the bank after the protest, were they? A. Yes, sir. Q. And this memorandum 'Sent notice to B. A. Zollner, John H. Moffitt and W. C. Fishburne, Charleroi Savings & Trust Company' was written by you on the certificate before you returned it to the bank? A. Yes, sir. Q. When did you return it to the bank? A. The following morning. Q. And it had this memorandum on it at that time? A. Yes, sir. Q. Now, Miss Richardson, I hope you will understand me as not meaning anything offensive. This memorandum was not a lie, was it?"

Objected to and no answer.

"Q. Then you returned this certificate and the note to the bank the next morning with this memorandum on it? A. Yes, sir."

Redirect examination by Mr. Irwin: "Q. Miss Richardson, I ask you whether or not the memorandum 'Sent notice to B. A. Zollner, John H. Moffitt and W. C. Fishburne, Charleroi Savings & Trust Company,' was written on there at the same time that you signed and sealed the certificate? A. Yes, sir, before I sealed it. Q. Before you put your seal on, that memorandum was on? A. Yes, sir. Q. At the time you put that memorandum on there had you, as a matter of fact, sent notice to any of these parties? A. No, sir, I hadn't made the notice. Q. Showing you again exhibit No. 1, I ask you whether or not that is the only notice of protest you ever made out for B. A. Zollner? A. November 1, 1906, for B. A. Zollner. Q. Notice of protest of the note in suit? A. Yes, sir. Q. Is this the envelope? A. Yes, sir, that is my writing."

The evident purpose of the point was to have the court make the case turn upon the fact that the notary had not made out and sent the notices of protest to the indorsers before she signed and sealed the certificate of protest of the note in suit. In other words,—the fact being admitted,—the court was asked as a matter of law to say that the plaintiff's proof of protest and notice to the indorsers as found in the certificate of the notary was completely met and the verdict of the jury should be for the defendant unless there was proof of notice aliunde the certificate.

The Act of December 14, 1854, sec. 2, found in the Pamphlet Laws, 1855, 724, makes the certificate of the notary proof of the facts therein stated in all suits pending between the parties, which includes proof of presentation and dishonor of the note and notice to the maker and indorsers. Does the testimony of the notary that she, in the performance of her duty, signed and sealed the certificate before she made out and sent the notices to the indorsers, overcome this proof, or, to use the language of the point, "completely rebut" the presumption of due notice arising from the facts

stated in the certificate, and is this a question of law to be
determined by the court and not by the jury?

At the trial we thought that the fact that the notary signed
the certificate offered in evidence in order of time before she
had made out and sent the notices was not conclusive proof
that she did not at any time make out and send notices to the
indorsers and therefore did not completely rebut the proof
found in the certificate under the provisions of the act of 1854.
We further thought that the question whether this fact was
sufficient to overcome the proof found in the certificate was
a question for the jury and not the court, and we are still of
the same opinion. It will be noticed by reference to the tes-
timony of the notary that she was not asked whether she had
sent the notices before she delivered the certificate of protest
to the bank, nor was she asked whether she had delivered the
notices to the indorsers immediately after she had signed,
sealed and delivered the certificate. We do not know what
she might have said to these last questions. She might have
answered "Yes" she might have answered "No;" she might
have answered "I do not recollect." How then does the
simple fact that the certificate was signed and sealed by the
notary in order of time before she had sent out notices to the
indorsers meet "the proof" that she did send out such no-
tices? The act of 1854 does not provide that the notices to
indorsers must be sent before the certificate is signed and
sealed and that if they are not so sent it shall not be proof.
In the eyes of the law, the protest, including the presentation,
the making out of the certificate and the giving of notices to
the indorsers, is one act, and the order of time in which the
constituent parts of that act are performed is immaterial.
On the whole case the question to be determined was, Had
the proof of notice to John H. Moffitt of the nonpayment of
this note at maturity, which was found in the certificate of-
fered in evidence and admittedly executed and delivered by
the notary in good faith, been overcome, and this in our opin-
ion was a question for the jury and it was not within the
province of the court to say that the fact "that at the time
the notary signed and sealed the certificate of protest of the

note in suit she had not made out nor sent the notice to any of the indorsers," completely rebutted the presumption of due notice arising from the certificate itself. We are therefore of the opinion that the point presented by the defendant at the trial was correctly answered.

Granting that the court erred in not sustaining the objection to the offer made when the witness Risbeck was on the stand, the error was innocuous, as the witness failed to testify to what the plaintiff offered to prove, and the defendant's objection was in the end sustained, as will appear by reference to the record.

And now, April 14, 1909, the motion of the defendant for a new trial is overruled.

*Error assigned* among others was refusal of defendant's point as above, quoting it.

*R. W. Irwin*, with him *D. M. McCloskey* and *J. A. Wiley*, for appellant, cited: M'Gee v. Bank, 5 Watts, 32; Craig v. Shallcross, 10 S. & R. 377; Parry v. Almond, 12 S. & R. 284.

*John C. Bane*, with him *B. G. Hughes* and *H. B. Hughes*, for appellee, cited: Baumgardner v. Reeves, 35 Pa. 250; Starr v. Sanford, 45 Pa. 193; Zollner v. Moffitt, 222 Pa. 644; Stewart v. Allison, 6 S. & R. 323; Spear v. R. R. Co., 119 Pa. 61; McCafferty v. R. R. Co., 193 Pa. 339; Devlin v. Beacon Light Co., 198 Pa. 583; Heh v. Gas Co., 201 Pa. 443; Leibig v. Steiner, 94 Pa. 466; Penna. R. R. Co. v. Weiss, 87 Pa. 447; Repsher v. Wattson, 17 Pa. 365; Jenks v. Doylestown Bank, 4 W. & S. 505.

PER CURIAM, October 25, 1909:

The judgment is affirmed on the opinion of the court below.